IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE LIFE & ANNUITY INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No.: 08 CV 2232 ) ) Judge Zagel |
| KERRY BECKER, *et al* | ) ) |
| Defendants. | ) |

**KERRY BECKER'S MOTION FOR JUDGMENT ON THE VERDICT FOR THE FACE VALUE OF THE LIFE INSURANCE POLICY *NUNC PRO TUNC* AND FOR JUDGMENT ON THE ISSUE OF PRE-JUDGMENT INTEREST**

Kerry Becker by and through her attorneys, Roberts & Caruso, and pursuant to Federal Rule of Civil Procedure No. 58, hereby moves for judgment on Count I of her Counter-Complaint and in support thereof states as follows:

**Background**

At trial, there were two main issues in dispute to be addressed: (1) whether Mr. Yarbrough committed suicide and (2) assuming Mr. Yarbrough did not commit suicide, what interest rate applied to Mrs. Becker's $500,000 death benefit from a certain life insurance policy insuring Mr. Yarbrough's life. In an effort to simplify the jury instructions, the parties agreed to submit only the suicide issue to the jury and agreed to allow this Court to determine the appropriate amount of interest payable to Mrs. Becker in the event the jury ruled in favor of Mrs. Becker on the first issue of Mr. Yarbrough's suicide. Mrs. Becker understood that if the jury ruled in her favor, she would receive a money judgment for the face value of the insurance policy that day, and would later obtain a determination from the trial court judge regarding the proper amount of her prejudgment interest. Now that the jury has ruled in Mrs. Becker's favor, she

1

requests: (1) a money judgment in the amount of the face value of the insurance policy, $**500,000.00**, *nunc pro tunc* to July 20, 2012, the date of the verdict, and (2) prejudgment interest in the amount of 9% per year from the date of Mr. Yarbrough's death through the date of verdict, totaling **$243,863.01.**

I. **Prejudgment Interest is Due At the Rate of 9% Per Year from the Date of Death (February 21, 2007) Through the Date of Verdict (July 20, 2012).**

Mrs. Becker and Nationwide agree that the insurance policy has a face value of $500,000, and they agree that prejudgment interest is due to Ms. Becker. They disagree, however, as to the applicable rate of prejudgment interest due and owing on the policy. Mrs. Becker claims that prejudgment interest accrues at the rate of 9% per year; Nationwide claims that prejudgment interest accrues at the rate of 5% per year. (See Nationwide's Trial Brief, Dkt. No. 84, Page ID# 936).

Under Illinois law prejudgment interest is not recoverable absent a statute or an agreement providing for it. *City of Springfield v. Allphin,* 82 Ill.2d 571, 576 (1980). According to the Affidavit of Nationwide's claim supervisor, Mark Trigg, "Nationwide follows the law of the jurisdiction whose law governs the life insurance policy, so, for example, if Illinois law governed the life insurance policy, then Nationwide would apply Illinois law regarding the amount/percentage of interest owed." (Dkt. No. 95, Page ID# 1096). Insurance policies are governed by the law in force at the time of issuance. *Nabor v. Occidental Life Ins. Co. of Cal.,* 78 Ill.App.3d 288, 289 (1st Dist. 1979) *citing* 12 APPELMAN, INSURANCE LAW AND PRACTICE, §7041. That law, 215 ILCS 5/224(l) (West 2005) ("the Old Law"), clearly and unambiguously provided for 9% interest:

> "(l) Interest shall accrue on the proceeds payable because of death the insured, from the date of death, at the rate of 9% on the total amount payable or the face amount if payments are to be made in installments until the total payment or first

installment is paid, unless payment is made within fifteen (15) days from the date of receipt by the company of due proof of loss. This provision need not appear in the policy, however, the company shall notify the beneficiary at the time of claim of this provision. The payment of interest shall apply to all policies in force, as well as those written after the effective date of this amendment."

Consistent with Mark Trigg's affidavit, Nationwide followed the Old Law's 9% per year requirement when it paid Greg Yarbrough 9% interest on an identical life insurance policy that Greg Yarbrough purchased to insure the life of Mrs. Becker's late husband, Martin Becker. (Becker Trial Ex. 4). Thus, Nationwide should also pay Mrs. Becker prejudgment interest at the rate of 9% per year on Mrs. Becker's identical policy insuring Mr. Yarbrough's life. Mrs. Becker calculates this amount as follows: $500,000 x 0.09 x (5 + 150/365 yrs) = **$243,493.15.**

## II. Nationwide's Assertion that its Policy Pays Interest at the Rate of 5% Per Year is Based on a Statute Not in Effect When Nationwide Issued its Policy.

Perhaps the source of Nationwide's claim that the insurance policy pays only 5% prejudgment interest per year arises out of the fact that on August 23, 2011, Governor Quinn signed into law Public Act No. 097-0527 ("the New Law"), which among other things, amended Section 224(l), increased the interest rate from 9% per year to 10% per year, but provided insurers with certain safe harbors to toll the running of the 10% interest rate. The specific changes to Section 224(l) are as follows:

> "(l) Interest shall accrue on the proceeds payable because of the death of insured, from the date of death, at the rate of 10% annually 9% on the total amount payable or the face amount if payments are to be made in installments until the total payment or first installment is paid, unless payment is made within 31 fifteen (15) days from the latest of the following to occur:
>
> (1)  the date that due proof of death is received by the company;
>
> (2)  the date that the company receives sufficient information to determine its liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds; or

3

> (3) <u>the date that the legal impediments to payment of proceeds that depend on the action of parties other than the company are resolved and sufficient evidence of the same is provided to the company; legal impediments to payment include, but are not limited to, (A) the establishment of guardianships and conservatorships, (B) the appointment and qualification of trustees, executors, and administrators, and (C) the submission of information required to satisfy State and federal reporting requirements.</u>
>
> ~~date of receipt by the company of due proof of loss.~~ This provision need not appear in the policy, however, the company shall notify the beneficiary at the time of claim of this provision. The payment of interest shall apply to all policies in force, as well as those written after the effective date of this amendment.

Ill. Public Act. No. 097-0527. In its Trial Brief, Nationwide asserts that the safe-harbor provision created in Paragraph 2 of the New Law tolls the running of the 10% interest rate "unless and until there is a judgment against Nationwide". (Nationwide's Trial Brief, Docket No. #84, PageID #940). Instead, Nationwide asserted in its Trial Brief that under the New Law, prejudgment interest on Mrs. Becker's death benefits accrues at the Illinois Interest Act's statutory rate of 5% per year. *Id.* at PageID #939, *citing* 815 ILCS 205/2. Mrs. Becker concedes that if the New Law had been in effect at the time Nationwide issued its policy insuring the life of Greg Yarbrough (it was not), then prejudgment interest would have accrued at the Interest Act's rate of 5% per year. Under Nationwide's analysis, Mrs. Becker would be owed prejudgment interest in the amount of **$135,273.97** ($500,000 x 0.05 x (5 + 150/365 years).

Section 99 of the New Law, entitled "Effective Date", states "This Act takes effect upon becoming law." Ill. Public Act. No. 097-0527, §99. Thus, the New Law took effect on August 23, 2011. The New Law was not in effect at the time Nationwide issued its insurance policy (June, 2005) nor at the time Mr. Yarbrough died and Mrs. Becker's death benefits became due (February, 2007). Therefore, there should be no doubt that Mrs. Becker is entitled to the Old Law's 9% statutory interest rate at least until August 23, 2011, when the New Law took effect.

After August 23, 2011, the analysis becomes trickier. There are absolutely no indications in the New Law or its legislative history that the New Law's new safe-harbor provisions should be applied retroactively to claims filed and policies issued under the Old Law. After a thorough and diligent search, Mrs. Becker did not find any reported cases addressing whether the New Law's new safe-harbor provisions apply retroactively to claims filed and policies issued under the Old Law. Without adequate guidance from the Illinois courts or the Illinois General Assembly, this Court (which sits in diversity jurisdiction) should not deviate from the general rule that insurance policies are governed by the law in force at the time of issuance, and award Mrs. Becker 9% prejudgment interest from the date of death to the date of judgment. 12 APPELMAN, INSURANCE LAW AND PRACTICE, §7041.

The closest case Mrs. Becker could find is *Nabor v. Occidental Life Ins. Co.,* 78 Ill.App.3d 288 (1st Dist. 1979). Like this case, the *Nabor* court confronted a scenario where an insurer denied coverage due to a suicide provision, but ultimately lost at trial. Like this case, during the pendency of the litigation, the Illinois General Assembly amended the Illinois Insurance Act. However, unlike this case, the amendment in *Nabor* merely changed the applicable rate of interest from 6% to 5%. *Id.* at 293. The *Nabor* amendment did not add new safe-harbor provisions like the New Law in this case did. In considering whether to award 6% interest or 5% interest, the *Nabor* Court took a compromise approach and applied the 6% interest rate from the death of death until the date the amendment went into effective, after which the Court applied the lower 5% rate. *Id.* at 294.

Mrs. Becker admits that the *Nabor* court applied a thoughtful analysis of how to apply changes in statutory interest rates to pending claims, however, *Nabor* is distinguishable from this case because the *Nabor* amendment merely changed the statutory interest rate; whereas the New

5

Law applicable in this case *added* substantive safe-harbor provisions that an insurer could use to avoid paying out prejudgment interest.

Substantial injustice would result should this Court allow Nationwide to reduce its liability by relying upon a safe-harbor provision that did not exist at the time Nationwide issued its life insurance policy insuring Mr. Yarbrough or at the time Mr. Yarbrough died. If Nationwide had paid Mrs. Becker's death benefit on August 22, 2011, the day before the New Law went into effect, then Nationwide would have owed Mrs. Becker **$202,438.36** in prejudgment interest. After refusing to pay Mrs. Becker her death benefit for nearly another year after the New Law went into effect, Nationwide now asks this Court to retroactively apply a lower interest rate and *reduce* the total amount of prejudgment interest owed to Mrs. Becker by nearly **$67,000**. It is not likely that the Illinois General Assembly intended the New Law's safe-harbor provisions to take money already due away from life insurance beneficiaries retroactively.

There are ample reasons why this Court should not deviate from the generally accepted principal that insurance policies are governed by the law in force at the time of issuance, and award Mrs. Becker prejudgment interest at the rate of 9% per year from the date of Mr. Yarbrough's death until the date of judgment. If, however, this Court decides to take the *Nabor* approach by awarding 9% interest from the date of death until the date the New Law went into effect, and 5% interest thereafter, then Mrs. Becker would be entitled to prejudgment interest in the amount of **$225,164.38,** calculated as follows: $500,000 x 0.09 x (4 + 183/365 yrs) + $500,000 x 0.05 x (330/365 yrs).

WHEREFORE, Kerry Becker respectfully requests that this Honorable Court amend its judgment by entering judgment in the principal amount of **$500,000** *nunc pro tunc* as of the date of the jury verdict, July 20, 2012, plus enter a judgment for prejudgment interest in the amount of

6

**$243,493.15**, plus costs or, alternatively, enter any further or different relief as this Court may deem equitable and just.

                                                 Respectfully Submitted,

                                                 _____/s/ James L. Ryan_____

Matthew T. Caruso
James L. Ryan (#6290637)
ROBERTS & CARUSO
411 W. Wesley
Wheaton, Illinois 60187
Ph: (630) 510-1800
Fax: (630) 510-1811
mattcaruso@sbcglobal.net
james.l.ryan@sbcglobal.net
***Attorneys for Kerry Becker.***